**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TROY L. HARRIS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-951** |
| **N. BURL CAIN, WARDEN** | **SECTION "B"(1)** |

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE.**

Petitioner, Troy Harris ("Harris"), is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.[1] On August 28, 2008, he was charged by bill of indictment with three counts: (1) Aggravated Rape, (2) Aggravated Kidnapping, and (3) Indecent Behavior in the Presence of an Individual Under the Age of Thirteen Years.[2] On May 4, 2010, he proceeded to trial, waiving his right to a jury, despite his counsel's advice to the contrary.[3] On May 5, 2010, trial was

---

[1] Rec. Doc. No. 1, Petition.

[2] State Rec., Vol. 1 of 4, Bill of Indictment, 8/28/08.

[3] State Rec., Vol. 2 of 4, Trial Transcript, 5/4/10; State Rec., Vol. 1 of 4, Minute Entry, 5/4/10.

1

interrupted when a question arose as to Harris' competency to stand trial.[4] The trial court appointed a doctor to examine him regarding his competency.[5] After her examination of Harris, the doctor testified that while Harris seemed to understand the nature of the proceedings, further inquiry would be helpful regarding his ability to assist his attorney, and she suggested that other doctors be asked to examine Harris to see whether they agreed.[6] Thus, two more doctors were scheduled to examine Harris on the next day, with proceedings set to resume with their testimony and findings on May 11, 2010.[7] On May 11, 2010, one of the examining doctors testified that he found Harris to be competent, and the parties stipulated that the remaining doctor's testimony would reflect the same.[8] The trial court then found Harris competent to stand trial and ordered proceedings to continue.[9] On May 18, 2010, he was convicted of Aggravated Kidnapping, Attempted Aggravated Rape, and Indecent Behavior with a Juvenile in the Presence of an Individual Under the Age of Thirteen Years.[10] On October 15, 2010, the trial court sentenced Harris, as to the charges of Attempted Aggravated Rape and Indecent Behavior with a Juvenile in the Presence of an Individual Under the Age of Thirteen Years, to terms of twenty-five years, and as to the charge of Aggravated

---

[4]The Trial Transcript reflects that Harris sent a letter to his sister that raised some questions about his sanity. State Rec., Vol. 2 of 4, Trial Transcript, 5/5/10.

[5]*Id.*

[6]*Id.*

[7]*Id.*

[8]State Rec., Vol. 2 of 4, Trial Transcript, 5/11/10.

[9]*Id.*

[10]State Rec., Vol. 1 of 4, Minute Entry, 5/18/10; State Rec., Vol. 3 of 4, Trial Transcript, 5/18/10.

Kidnapping, to a term of life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence.[11] The sentences were to run concurrently.

On direct appeal, Harris' appointed counsel asserted a single error: that the trial court erred in allowing Harris to waive a jury trial without further questioning concerning his understanding of the consequences and his constitutional right to a jury trial.[12] The Louisiana Fourth Circuit Court of Appeal affirmed Harris' conviction on April 25, 2012.[13] The Louisiana Supreme Court denied his related writ application on October 12, 2012, without reasons.[14]

On or about March 13, 2013, Harris filed a *pro se* application for post-conviction relief with the state district court.[15] That application was denied with reasons on May 1, 2013.[16] His related writ applications were then likewise denied by the Louisiana Fourth Circuit Court of Appeal on June 19, 2013,[17] and by the Louisiana Supreme Court on February 21, 2014.[18]

On or about April 8, 2014, Harris filed a petition for federal *habeas corpus* relief.[19] In his federal petition he asserts four claims: (1) the trial court erred in allowing defendant to waive a jury

---

[11]State Rec., Vol. 3 of 4, Sentencing Transcript, 10/15/10; State Rec., Vol. 1 of 4, Minute Entry, 10/15/10.

[12]State Rec., Vol. 3 of 4, Appeal Brief, 9/22/11.

[13]*State v. Harris*, 91 So. 3d 493 (La. App. 4th Cir. 2012) (No. 2011-KA-0715); State Rec., Vol. 1 of 4, 4th Cir. Opinion, 2011-KA-7015, 4/25/12.

[14]*State ex rel. Harris*, 99 So. 3d 40 (La. 2012) (Mem); State Rec., Vol. 1 of 4, La. S. Ct. Order, 2012-KH-1220, 10/12/12.

[15]State Rec., Vol. 1 of 4, Docketmaster entry dated 3/13/13. As the State notes in its response, Harris' post-conviction relief application is not contained within the records of the trial court, Fourth Circuit, or Supreme Court. The Docketmaster entry is the only indication of when his post-conviction relief application was filed.

[16]State Rec., Vol. 1 of 4, Judgment, 5/1/13.

[17]State Rec., Vol. 1 of 4, 4th Cir. Order, 2013-K-0797, 6/19/13.

[18]State Rec., Vol. 4 of 4, La. S. Ct. Order, 2013-KH-1803, 2/21/14.

[19]Rec. Doc. No. 1, Petition.

trial without further questioning concerning his understanding of the consequences and his constitutional right to a jury trail; (2) ineffective assistance of appellate counsel; (3) denial of the right to an effective appeal; and (4) violation of his constitutional rights when he was not given a proper sanity hearing prior to trial.[20]  The State concedes that the application is timely but argues that claims (1) and (4) have not been properly exhausted, and that the other claims lack merit.

## I.     *Standards of Review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in a state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b),(c)).  In this case, as noted above, the State has raised an exhaustion defense.

This court, however, finds that Harris' writ application to the Louisiana Supreme Court fairly presented the arguments presented to this court, even if he did not immediately pursue further review in that court.  Accordingly, this court does not accept the State's exhaustion defense.  Even if his arguments might be construed as unexhausted, however, the claims are meritless and may be addressed by this court.  28 U.S.C. § 2254(b)(2).  Thus, this court turns to the merits below.

Amended subsections 2254(d)(1) and (2) of the AEDPA contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent

---

[20]*Id.*

federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell*, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

*Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

*Id.* (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement*.

*Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786–87, 178 L.Ed.2d 624 (2011) (citations omitted; emphasis added); see also *Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866, 176 L.Ed.2d 678 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

## II.   *Facts*

On direct appeal, the Louisiana Fourth Circuit Court of Appeal laid out in detail the facts and relevant procedural history of this case:[21]

> On August 28, 2008, the defendant was indicted by a grand jury for aggravated rape, aggravated kidnapping, and indecent behavior with a juvenile in the presence of an individual under the age of thirteen years. He was arraigned on November 3, 2008, and pleaded not guilty. Although informed of his right to be tried by a judge or a jury, he did not make a selection at the arraignment hearing. However, when the matter came to trial on May 4, 2010, as indicated in the following colloquy, the defendant elected to waive his right to trial by jury and proceed with a judge trial:
>
> DEFENSE COUNSEL: Judge, at this time Mr. Harris wants to waive his right to a jury trial. I have met with Mr. Harris several times on this issue, and several times

---

[21]*State v. Harris*, 91 So. 3d 493 (La. App. 4th Cir. 2012) (No. 2011-KA-0715); State Rec., Vol. 1 of 4, 4th Cir. Opinion, 2011-KA-7015, 4/25/12 (footnotes from original).

7

he has told me of his desire to waive the jury. I have told him about the consequences, and I have instructed him that my advice was to not waive the jury trial, but he wants to go ahead and waive the jury trial and proceed with a judge trial.

JUDGE: What do you care to do, sir?

DEFENDANT: What?

JUDGE: You have the right to be tried before a judge or a jury. Make your selection.

DEFENDANT: A judge.

JUDGE: Alright. Let the record reflect that the defendant has indicated that he wants a judge trial.

Shortly thereafter, the judge trial began. After the State's first witness, Detective Kurt Coulon of the New Orleans Police Department (the investigating officer), completed his testimony, however, the judge recessed the trial. The following day (May 5, 2010), rather than continuing the trial, the judge opened a hearing to determine if the defendant was competent to proceed with the trial.[22]

After interviewing the defendant, Dr. Sarah Deland, an expert in Forensic Psychiatry, testified that he understood the charges, the seriousness of those charges, his legal rights, offered a plausible explanation for choosing a judge trial over a jury trial, and had an adequate understanding of the proceedings.[23] However, Dr. Deland was concerned because the defendant expressed paranoid ideas about his current attorney, as well as one idea about his defense that she did not believe was rooted in rational thinking. Thus, although she believed the defendant had an adequate understanding of the proceedings, Dr. Deland questioned his ability to effectively

---

[22]The transcript indicates that concern as to his competence was created by statements the defendant made in a letter to his sister, the victim's mother, describing his vision involving God offering him forgiveness.

[23]Pursuant to *State v. Bennett*, 345 So.2d 1129 (La.1977) (on rehearing), the decision regarding a defendant's competency to stand trial should not turn solely upon whether he suffers from a mental disease or defect, but must be made with specific reference to the nature of the charge, the complexity of the case, and the gravity of the decision with which the defendant is faced. Thus, the appropriate considerations in determining whether the defendant is fully aware of the nature of the proceedings include whether (1) he understands the nature of the charge and can appreciate its seriousness; (2) he understands what defenses are available; (3) he can distinguish a guilty plea from a not guilty plea and understand the consequences of each; (4) he has an awareness of his legal rights; and (5) he understands the range of possible verdicts and the consequences of conviction. *Bennett*, 345 So.2d at 1138. In determining the defendant's ability to assist in his defense, the court should consider whether (1) he is able to recall and relate facts pertaining to his actions and whereabouts at certain times; (2) he is able to assist counsel in locating and examining relevant witnesses; (3) he is able to maintain a consistent defense; (4) he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; (5) he has the ability to make simple decisions in response to well-explained alternatives; (6) if necessary to defense strategy, he is capable of testifying in his own defense; and (7) to what extent, if any, his mental condition is apt to deteriorate under the stress of trial. *Id.*

assist counsel and, in order to reach a final decision, was interested in obtaining a second opinion from another doctor. Accordingly, the trial court appointed Dr. Raphael Salcedo and Dr. Richard Richaux to participate in the sanity commission and the matter was recessed.

On May 11, 2010, Dr. Richaux testified that he along with Dr. Salcedo interviewed the defendant on May 6, 2010. Dr. Richaux stated that the defendant showed no signs of psychotic symptoms, did not say anything of a delusional nature, and was not showing any disorganization or abnormalities of thought process or content. Dr. Richaux discussed the contents of the defendant's letter to his sister with him and opined that the defendant was not describing true visual hallucinations but, rather, something akin to an image in his mind when he talked about God. Dr. Richaux testified that the defendant understood the nature of the proceedings and, in his opinion, was fully capable of assisting counsel in that he could listen to testimony, point out any inconsistencies to counsel, and testify on his own behalf if necessary. It was stipulated that if Dr. Salcedo were to testify, his testimony would be substantially similar to Dr. Richaux's testimony. Based upon the testimony and stipulated testimony, the judge found that the defendant understood the nature of the proceedings and was able to assist his attorney in his defense.

On May 18, 2010, the trial resumed. The State presented the testimony of the ten-year-old victim, the victim's eight-year-old sister, the victim's mother, Dr. Mayling Gutierrez Walker (a clinical psychologist who interviewed the victim at the New Orleans Child Advocacy Center), and Dr. Yameika Head (the pediatric resident who examined the victim at the New Orleans Child Advocacy Center). After submitting videotapes of the forensic interviews with the victim and the victim's sister into evidence, the State rested. The defendant moved for a directed verdict, which was denied, and then replayed portions of the videotaped interviews. After replaying portions of the videotaped interviews, the defense rested. After closing arguments, the trial judge found the defendant guilty of indecent behavior with a juvenile in the presence of an individual under the age of thirteen years, aggravated kidnapping, and attempted aggravated rape.

The defendant was sentenced to concurrent sentences of life imprisonment without benefit of probation, parole, or suspension of sentence for aggravated kidnapping, a twenty-five year term of imprisonment for attempted aggravated rape, and a twenty-five year term of imprisonment for indecent behavior with a juvenile in the presence of an individual under the age of thirteen years.

### III.    *Petitioner's Claims*

#### 1.    **Trial court error in allowing defendant to waive jury trial without further inquiry and in failure to conduct a proper sanity hearing prior to trial**

Harris asserts in his first claim that the trial court erroneously denied him his right to a jury trial based on his alleged incompetency which rendered his waiver unintelligent and involuntary.

He further contends in his fourth claim that the trial court erred in failing to conduct a proper sanity hearing prior to trial. Federal law governs the effectiveness of a waiver of a federal constitutional right. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). The right to a jury trial in a criminal case is a fundamental constitutional right. *Duncan v. Louisiana*, 391 U.S. 145, 157–58 (1968). A defendant may waive that right, but the waiver must be express and intelligently made. *See Singer v. United States*, 380 U.S. 24, 34 (1965). Whether "there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 278 (1942).

Therefore, it is impermissible to presume the waiver of important constitutional rights–including the right to trial by jury–from merely a silent record. *Boykin*, 395 U.S. at 242-43; *Dulin v. Henderson*, 448 F.2d 1238, 1240 (5th Cir. 1971). Rather, "[t]he record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer." *Boykin*, 395 U.S. at 242 (quoting *Carnley v. Cochran*, 369 U.S. 506, 516 (1962)).

Here, the record clearly indicates a knowing and intelligent waiver was made by Harris. In fact, his own counsel stated to the court:

> I have met with Mr. Harris several times on this issue, and *several times* he has told me of his desire to waive the jury. I have *told him about the consequences, and I have instructed him that my advice was to not waive the jury trial*, but he wants to go ahead and waive the jury trial and proceed with a judge trial.

*State v. Harris*, 91 So. 3d 493 (La. App. 4th Cir. 2012) (No. 2011-KA-0715); State Rec., Vol. 1 of 4, 4th Cir. Opinion, 2011-KA-7015, 4/25/12. After this statement by Harris' counsel, the district judge asked Harris directly of his preference, and he again indicated his desire to waive a jury trial.

10

It is therefore clear from the record that Harris was indeed informed of his constitutional right to a jury and affirmatively chose to waive that right.

Furthermore, the issue of Harris' competency to waive the jury trial was raised on direct appeal and considered by the Louisiana Fourth Circuit Court of Appeal. The Fourth Circuit stated in relevant part:

> The record in this case reflects that when counsel for the defendant informed the trial judge of the defendant's decision to waive his right to a jury, counsel advised the court that (1) he met with the defendant on several occasions to discuss the decision; (2) he advised the defendant of the consequences of his decision; (3) he counseled Mr. Harris against waiving the jury; and (4) despite his advice, the defendant decided to proceed with a judge trial. The trial judge then personally addressed the defendant and advised him again of his right to be tried by a jury or a judge before asking him to make his selection. The defendant clearly stated that he wanted a judge trial.

*Id.* This decision was not contrary to or an unreasonable application of federal law, and thus Harris' claim as to his jury waiver must fail. Finally, as further explained below, the trial court later found Harris competent to stand trial, which thus reiterates the fact that he was also competent to waive his right to a jury trial.

Insofar as Harris challenges the competency hearing itself, and his own competency to stand trial, that claim must also fail. Before a federal habeas court has a duty to investigate a petitioner's incompetency claim "the petitioner must show that there are sufficient facts to positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to the mental capacity of the petitioner to meaningfully participate and cooperate with counsel during trial." *Moody v. Johnson*, 139 F.3d 477, 481 (5th Cir. 1998). Harris has not made this showing. Rather, he has simply asserted that the trial court should have asked "further questions," despite having ordered three examinations of Harris by three separate doctors, who collectively concluded that he was indeed competent for trial. For the foregoing reasons, this claim must also fail.

### 2. Ineffective assistance of appellate counsel and denial of right to an effective appeal

In Harris' remaining claims he raises two related issues: ineffective assistance of appellate counsel and denial of his right to an effective appeal. As the State notes in its response, the basis for both of these claims are essentially the same–that his appellate counsel "abandoned" him during the process of his appeal. Harris asserts that because he never received a timely copy of his appeal brief and the appellate court's denial of his claim, he failed to timely file his direct appeal with the Louisiana Supreme Court, which therefore denied him his right to an effective appeal.

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel. Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was constitutionally deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir.1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e.* deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's

actions in light of all the circumstances.  *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (*quoting Strickland*, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir.1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

Because the state courts rejected petitioner's ineffective assistance of counsel claims on the merits and because such claims present a mixed question of law and fact, this court must defer to the state-court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court recently explained that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact doubly deferential:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.

13

> For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Ibid.* "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Knowles v. Mirzayance*, 556 U.S. 111, ––––, 129 S.Ct. 1411, 1413–14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

*Harrington v. Richter*, 131 S.Ct. 770, 785–86 (2011) (citation omitted). The Supreme Court then

explained:

> Surmounting *Strickland's* high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

*Id*. at 788 (citations omitted; emphasis added).

14

Here, the district court denied both of these claims on the merits in its post-conviction relief judgment. The district court found that Harris had in fact been given notice of the judgment of the appellate court on April 25, 2012.[24] Furthermore, the district court denied the claim regarding his denial of an effective appeal on the basis of his lawyer's "abandonment." The trial court had appointed the Louisiana Appellate Project as Harris' appellate counsel. His original attorney left the appellate project only after timely filing Harris' appellate brief. As the district court noted, the "Louisiana Appellate Project took the matter to resolution before the Court of Appeal, Fourth Circuit." Harris was not entitled to further representation by the Louisiana Appellate Project.

This court's review of the record confirms that the denial of these claims was neither contrary to nor an unreasonable application of federal law, because Harris has failed to prove either prong under the stringent standards required by *Strickland*. Harris did indeed receive notice of the Fourth Circuit decision, and his letter to the Louisiana Supreme Court reflects that.[25] The letter, dated April 30, 2012–just five days after the Fourth Circuit decision–indicates that Harris had received notice of his appeal and was requesting an extension of time to file his brief. Thus, he was completely aware of his filing deadlines, and cannot rely on a claim of ineffective assistance of counsel before this court to seek further review of his claims, which were denied on the merits in the state courts.

Finally, the right to counsel on appeal in Louisiana is limited to the first appeal as of right, a practice which the United States Supreme Court has confirmed is constitutionally sound. *See Ross v. Moffit*, 417 U.S. 600, 616-17 (1974); *State v. Thomas*, 750 So. 2d 114, 1127 (La. App. 5th Cir. 1999). Thus, once the Louisiana Appellate Project had filed Harris' appeal brief, it no longer had

---

[24]State Rec., Vol. 1 of 4, Judgment, 5/1/13.

[25]State Rec., Vol. 4 of 4  Letter to the La. S. Ct., 4/30/12.

15

a duty to assist Harris to further seek discretionary review. For these reasons, Harris simply cannot show that his appellate counsel was ineffective. He is therefore not entitled to federal *habeas corpus* relief on this claim.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Troy Harris be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).[1]

New Orleans, Louisiana, this __4th__ day of __March__, 2015.



                              **SALLY SHUSHAN**
                              **UNITED STATES MAGISTRATE JUDGE**

---

[1] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.