**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TROY L. HARRIS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-951** |
| **N. BURL CAIN** | **SECTION: "B"(1)** |

## ORDER AND REASONS

Before the Court is Troy L. Harris' ("Petitioner") petition pursuant to 28 U.S.C. § 2254 for writ of habeas corpus. (Rec. Doc. No. 1). Warden N. Burl Cain ("Respondent") filed an answer and memorandum in opposition to the petition. (Rec. Doc. No. 14). The matter was referred to United States Magistrate Judge Sally Shushan, who issued a Report and Recommendation on March 4, 2015, recommending that the petition be dismissed with prejudice. (Rec. Doc. No. 15). Petitioner filed timely objections to the Magistrate's ruling on March 12, 2015. (Rec. Doc. No. 16).

For the reasons enumerated below, it is **ORDERED** that the Magistrate's Report and Recommendation is **ADOPTED** and the instant habeas corpus petition is **DISMISSED WITH PREJUDICE.**[1]

---

[1] We are grateful for the work on the case by Sarah Didlake, a Loyola University New Orleans College of Law extern with our Chambers.

Causes of Action and Facts of Case:

The petition arises out of Petitioner's incarceration at the Louisiana State Penitentiary in Angola, Louisiana, stemming from May 18, 2010 convictions for Aggravated Kidnapping, Attempted Aggravated Rape, and Indecent Behavior with a Juvenile in the Presence of an Individual Under the Age of Thirteen Years.[2]

The record reflects that, on May 4, 2010, Petitioner proceeded to trial and elected to waive his right to a jury, despite his counsel's advice to the contrary.[3] However, on May 5, 2010, questions arose as to Petitioner's competency, prompting the judge to interrupt the trial and appoint Dr. Sara Deland to examine Petitioner.[4] Following an examination, Dr. Deland testified that, although Petitioner seemingly understood the nature of the proceedings, further inquiry by additional doctors would be helpful regarding his ability to assist his attorney.[5] The court then appointed Dr. Richard Richoux and Dr. Raphael Salcedo to join the Sanity Commission. On May 6, 2010, Doctors Richoux and Salcedo examined Petitioner and compiled a joint report ("the Commission's Report"), in which the doctors explained their reasoning for finding Petitioner competent to

---

[2] Rec. Doc. No. 1; State Rec., Vol. 1 of 4, Minute Entry, 5/18/10; State Rec., Vol. 3 of 4, Trial Transcript, 5/18/10.
[3] State Rec., Vol. 2 of 4, Trial Transcript, 5/4/10; State Rec., Vol. 1 of 4, Minute Entry, 5/4/10.
[4] State Rec., Vol. 2 of 4, Trial Transcript, 5/5/10.
[5] State Rec., Vol. 2 of 4, Trial Transcript, 5/5/10.

stand trial.[6] On May 11, 2010, both doctors were present for Petitioner's second competency hearing, wherein the trial court admitted the Commission's Report into evidence.[7] Dr. Richoux testified as to the Commission's findings, and the parties stipulated that Dr. Salcedo's testimony would reflect the same.[8] The court then held Petitioner competent to stand trial and ordered proceedings to continue.[9] Following the bench trial, Petitioner was convicted and subsequently sentenced to life imprisonment without the benefit of probation, parole, or suspension of sentence for Aggravated Kidnapping, and concurrent twenty-five year imprisonment terms for Attempted Aggravated Rape and Indecent Behavior with a Juvenile in the Presence of an Individual Under the Age of Thirteen Years.[10]

On direct appeal, Petitioner raised a single issue: that the trial court erred in allowing his jury waiver.[11] On April 24, 2012, the Louisiana Fourth Circuit of Appeal affirmed Petitioner's conviction and sentence.[12] The Louisiana Supreme Court denied Petitioner's related writ on October 12, 2012.[13]

On or about March, 13, 2013[14], Petitioner filed a *pro se*

---

[6] State Rec., Vol. 2 of 4, Trial Transcript, 5/11/10 at 4-10; State Rec., Vol. 1 of 4, Commission's Report, 5/6/10.

[7] State Rec., Vol. 2 of 4, Trial Transcript, 5/11/10 at 10; State Rec. Vol. 2 of 4, Minute Entry, 5/11/10.

[8] State Rec., Vol. 2 of 4, Trial Transcript, 5/11/10 at 10-11.

[9] State Rec., Vol. 2 of 4, Trial Transcript, 5/11/10 at 11.

[10] State Rec., Vol. 3 of 4, Trial Transcript, 5/18/10; State Rec., Vol. 3 of 4, Sentencing Transcript, 10/15/10.

[11] State Rec., Vol. 3 of 4, Appeal Brief, 9/22/11.

[12] *State v. Harris*, No. 2011-0715, 91 So. 3d 493 (La. App. 4th Cir. 2012).

[13] *State ex rel. Harris*, 99 So.3d 40 (La. 2010) (Mem).

[14] As Respondent notes, Petitioner's post-conviction relief application is not contained within any of the state courts' records. The Docketmaster is the only indication of the filing date. State Rec., Vol. 1 of 4, Docket Entry, 3/13/13.

application for post-conviction relief with the trial court, asserting the following three claims: (1) ineffective assistance of appellate counsel; (2) denial of the right to a proper appeal; and (3) denial of a proper competency hearing.[15] On May 1, 2013, the trial court denied that application, finding the first issue factually incorrect, the second moot, and the third inappropriate for post-conviction review.[16] Petitioner's related writ applications were subsequently denied by the Louisiana Fourth Circuit Court of Appeal on June 19, 2013[17] and by the Louisiana Supreme Court on February 21, 2014.[18]

On April 8, 2014, Petitioner filed the instant petition for federal habeas corpus relief wherein he contends that the state courts' denial of relief was contrary to federal law, asserting the following four claims: (1) the trial court erred in allowing Petitioner to waive his right to a jury trial; (2) ineffective assistance of appellate counsel; (3) denial of the right to an effective appeal; and (4) denial of a proper sanity hearing.[19]

Respondent concedes that Petitioner's application was timely, but urges that the first and fourth claims are procedurally barred for failure to properly exhaust state court

---

[15] Rec. Doc. No. 1 at 3, 7-9; State Rec., Vol. 1 of 4, Judgment, 5/1/13.
[16] State Rec., Vol. 1 of 4, Judgment, 5/1/13.
[17] State Rec., Vol. 1 of 4, Fourth Circuit Order, 2013-K-0797, 6/13/13.
[18] State Rec., Vol. 1 of 4, Supreme Court Order, 2013-KH-1803, 2/21/14.
[19] Rec. Doc. No. 1.

remedies and that Petitioners remaining claims lack merit.[20]

<u>Law and Analysis</u>:

**I. Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") controls the Court's review of Section 2254 petitions. *Woodford v. Garceau*, 538 U.S. 202, 205 (2003). The threshold questions are whether the petition was timely filed and whether the claims raised by the petitioner were adjudicated on the merits in a state court; that is, a petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

When considering a pure question of fact, the Court presumes factual findings to be correct and defers to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2)-(e)(1) (requiring "clear and convincing evidence" to rebut that presumption). When considering a pure question of law or a mixed question of fact and law, the Court defers to the state court's decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254 (d)(1).

---

[20] Rec. Doc. No. 14 at 6-14.

A state court decision is considered contrary to clearly established law when "(1) the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law ... or (2) the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that Supreme Court decision]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court decision is considered an unreasonable application of federal law when "(1) the state court unreasonably applies the correct governing legal rule to the facts of the particular case, (2) the state court unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should apply, or (3) the state court refuses to extend that principle to a new context where it should apply." *Id.* at 407.

Portions of a magistrate's report and recommendation to which a petitioner objects are reviewed de novo. Fed. R. Civ. P. 72(3). As Petitioner objected to each of the Magistrate Judge's findings, the Court will review the entirety of the Report and Recommendation accordingly. As explained below, the Court finds Petitioner's claims lack merit; therefore the Court need not consider in detail Respondent's exhaustion defense. *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998) (noting AEDPA "allows a federal court, in its discretion, to deny habeas relief on the merits, regardless of whether the applicant has exhausted state

remedies").[21]

II. Analysis

### i. <u>Denial of Right to a Jury Trial (Claim 1)</u>

Petitioner first argues that the trial court violated his constitutional right to a jury trial in allowing the jury waiver "without further questioning concerning his understanding of the consequences and his constitutional right to a jury trial."[22] Whether Petitioner knowingly and intelligently waived his right to a jury trial is a "legal question" reviewed under section 2254(d)(1). *Pierre v. Leger*, 495 Fed. App'x 403, 406 (5th Cir. 2012) (citing *Johnson v. Cain*, 196 F.3d 1258 (5th Cir. 1999)). Accordingly, the Court must defer to the state court's decision, unless the admission of Petitioner's waiver was contrary to, or involved an unreasonable application of clearly established Supreme Court precedent. *See id.* at 405-09 (noting that determining the validity of a waiver "may involve subsidiary factual questions subject to review under 2254(d)(2)").

The Constitution guarantees defendants the right to a jury trial in serious criminal cases. U.S. Const. amends. VI, XIV; *Duncan v. Louisiana*, 391 U.S. 145, 154-57 (1968). Defendants may waive this fundamental right and may exercise this option either

---

[21] Arguably, there may be merit to Respondent's exhaustion defense, at least as to Petitioner's first claim. However, the fourth claim appears to have been exhausted, as it was raised in his post-conviction relief application along with his allegations of ineffective assistance of appellate counsel and denial of the right to an effective appeal—Petitioner's second and third claims. State Rec., Vol. 1 of 4, Judgment, 5/1/13.
[22] Rec. Doc. No. 1 at 28.

through counsel or personally before the court. *See Singer v. United States*, 380 U.S. 24, 34 (1965); *Boykin v. Alabama*, 395 U.S. 238, 243 (1969); *United States v. Page*, 661 F.2d 1080, 1080-83 (5th Cir.1981). However, the waiver must be expressly and intelligently made. *See Singer*, 380 U.S. at 34 (citing *Patton v. United States*, 281 U.S. 276, 312 (1930), *abrogated on other grounds by Williams v. Florida*, 399 U.S. 78 (1970)); *Boykin*, 395 U.S. at 242-43 (holding that it is impermissible to presume a waiver of a constitutional right merely from a silent record).

Citing his "bare bones colloquy with the trial court," Petitioner asserts that the record demonstrates that his waiver was not knowingly and intelligently made.[23] The record is not silent on this issue. In fact, transcript of the first day of trial reveals the following exchange:

> DEFENSE COUNSEL: Judge at this time [Petitioner] wants to waive his right to a jury trial. I have met with [Petitioner] several times on this issue, and several times he has told me of his desire to waive the jury. I have told him about the consequences, and I have instructed him that my advice was not to waive the jury trial, but he wants to go ahead and waive the jury trial and proceed with a jury trial.
>
> JUDGE: What do you care to do, sir?
>
> DEFENDANT: What?
>
> JUDGE: You have the right to be tried before a judge or a jury. Make your selection.

---

[23] Rec. Doc. No. 1 at 25, 29.

DEFENDANT: A judge.

JUDGE: Alright. Let the record reflect that the defendant has indicated that he wants a judge trial.[24]

The validity of Petitioner's jury waiver was the sole issue raised on direct appeal and considered by the Louisiana Fourth Circuit Court of Appeal.[25] Finding Petitioner's waiver valid, the appellate court reasoned:

> The record in this case reflects when counsel for the defendant informed the trial judge of the defendant's decision to waive his right to a jury, counsel advised the court that (1) he met with the defendant on several occasions to discuss the decision; (2) he advised the defendant of the consequences of his decision; (3) he counseled [Petitioner] against waiving the jury; and (4) despite his advice, the defendant decided to proceed with a judge trial. The trial judge then personally addressed the defendant and advised him again of his right to be tried by a jury or a judge before asking him to make his selection. The defendant clearly stated that he wanted a judge trial.[26]

Petitioner fails to persuade the Court that, in the absence of a more thorough colloquy, his waiver was invalid. On habeas review, the absence of any colloquy between a defendant and the trial judge regarding the constitutional right to a jury trial "does not compel the finding that [the petitioner's] waiver was not knowing and intelligent." *See Pierre*, 495 Fed. App'x at 410. Several United States Courts of Appeals, including the Fifth

---

[24] State Rec., Vol 2 of 4, Trial Transcript, 5/4/10; State Rec., Vol 1 of 4, Minute Entry, 5/4/10.
[25] *State v. Harris*, 91 So.3d 493 (La. App. 4th Cir. 2012).
[26] *Id.*

Circuit, advise that the better practice calls for courts to engage in a colloquy with the defendant about a jury's function and the difference between a bench and a jury trial. *See id.* at 410-11 (citations omitted). Notably, however, United States Supreme Court has neither defined a "fact-specific constitutional minima for a valid jury waiver," nor required "a set of colloquy before a jury waiver can be accepted." *Scott v. Cain*, 364 Fed. App'x 850, 855 (5th Cir. 2010). Instead, the Supreme Court has determined that the test for a valid jury waiver "must depend upon the unique circumstances of each case." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 278 (1942). Moreover, the Fifth Circuit standard states that "minimum factual threshold for a knowing and intelligent personal waiver of the right to a jury trial is an open question when a defendant voices his preference for a bench trial in person." *See Scott v. Cain*, 364 Fed. App'x 850, 853 (5th Cir. 2010).

The Court presumes that the factual findings were correct because Petitioner's vague and unsupported statements claiming a right to further inquiry do not constitute the requisite clear and convincing evidence to rebut that presumption. § 2254(e)(1). Further, the record indicates and the appellate opinion echoes that Petitioner made a knowing and intelligent waiver of his right to a jury. In light of the absence of a clearly established minimum colloquy, the Court finds that the state

10

court's decision, in allowing the waiver, did not rest on an unreasonable application of federal law. *See Adams*, 317 U.S. at 278.

Finally, to the extent that Petitioner asserts invalid waiver due to competency issues, this claim also meritless. Petitioner argues that the colloquy was insufficient for any case, but urges that the questions raised about his competency "should have raised a red flag causing the trial court to ask further questions."[27] This allegation is misleading. As explained more detail below, Petitioner's competency to stand trial was questioned and the court to interrupted trial to open competency proceedings.[28] However, the jury waiver occurred prior to any issue of Petitioner's competency being called into question.[29] As a result, Petitioner's implication that that the standard of review for his jury waiver should be altered is unavailing.

ii.  **Ineffective Assistance of Appellate Counsel and Denial of Right to an Effective Appeal (Claims 2 & 3)**.

The Court will discuss Petitioner's second and third claims together because both claims rest upon Petitioner's assertion that his counsel "abandoned" him in the appeal process.[30]

In Petitioner's second claim, he argues ineffective assistance of appellate counsel on the following grounds: (1)

---

[27] Rec. Doc. No. 1 at 11.
[28] State Rec., Vol. 2 of 4, Trial Transcript 5/5/10.
[29] *State v. Harris*, 91 So.3d 493 (La. App. 4th Cir. 2012).
[30] Rec. Doc. No. 1 at 30.

"failure to notify [Petitioner] when the appeal was filed" or provide "an opportunity to obtain a copy of the brief," (2) failure to timely notify Petitioner when his appeal was denied or provide a copy of the court's decision.[31] Moreover, in his third claim, Petitioner cites this alleged abandonment of counsel as the cause of Petitioner's failure to file a timely writ application to the Louisiana Supreme Court and argues that "he was denied the right to a proper appeal."[32]

Claims of ineffective assistance of counsel claims are mixed questions of law and fact; thus, the inquiry is whether the state court's denial of relief was contrary to, or an unreasonable application of, federal law. *See, e.g., Clark v. Thaler,* 673 F.3d 410, 416 (5th Cir. 2012). The two-pronged test for evaluating such a claim provides that a petitioner must demonstrate the following: (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 697 (1984). A petitioner bears to "demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000).

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fell below the minimum "objective standard of reasonableness." *Little v.*

---

[31] Rec. Doc. No. 1 at 30-34.
[32] Rec. Doc. No. 1 at 34-35.

*Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). In an appellate context, the prejudice prong requires a petitioner to demonstrate a "reasonable probability" that he would have prevailed on his appeal "but for his counsel's unreasonable failure." *Briseno v. Cockrell*, 275 F.3d 204, 207 (5th Cir. 2001) (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000)).

Petitioner's first allegations of ineffective assistance concern the drafting and filing of his original appellate brief. Here, the record reflects that, on direct appeal, Petitioner was represented by counsel, who submitted an appellate brief to the Louisiana Fourth Circuit Court of Appeal.[33] As to the deficiency prong, Petitioner asserts that his counsel's alleged failure to notify or provide a copy of his appellate brief and record constituted "errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."[34] As to the second *Strickland* inquiry, Petitioner argues that he was irreparably prejudiced "because he was denied the opportunity to submit a pro se supplemental brief."[35]

First, Petitioner's unsupported assertion that these failures constitute deficient performance is insufficient demonstrate that counsel's performance was objectively unreasonable. Second, Petitioner's assertion of a right to

---

[33] State Rec., Vol. 1 of 4, Judgment, 5/1/13; State Rec. Vol. 1 of 4, Appellate Brief, 9/22/11.
[34] Rec. Doc. No. 1 at 34.
[35] Rec. Doc. No. 1 at 30, 34.

submit a *pro se* supplemental brief is misplaced. A criminal defendant does not have a constitutional right of self-representation on direct appeal. *Martinez v. Court of Appeal of California*, 528 U.S. 152, 164 (2000). Further, if a criminal appellant accepts assistance of counsel and subsequently disagrees with counsel's strategy or brief preparation, the appellant "cannot then expect to be allowed to file a supplemental pro se brief." *Myers v. Johnson*, 76 F.3d 1330, 1335 (5th Cir. 1996) (citing *McKaskie v. Wiggins*, 465 U.S. 168, 182-83 (1984)). As such, a criminal appellant "waives his right to present pro se briefs on direct appeal" via his acceptance of assistance of counsel. *Id.*

In sum, Petitioner fails to satisfy either of the requisite *Strickland* inquiries; therefore, Petitioner is not entitled to habeas relief for this claim.

Petitioner's remaining ineffective assistance claims concern his untimely writ application to the Louisiana Supreme Court. As to the first prong of the *Strickland* inquiry, Petitioner, claims that he "demonstrates deficient performance" by stating, without more, that his counsel failed to either timely notify or provide Petitioner with a copy of the Louisiana Fourth Circuit Court of Appeal's decision on direct appeal"[36] As to the second *Strickland* requirement, Petitioner argues these

---

[36] Rec. Doc. No. 1 at 34

alleged errors "irreparably prejudiced" Petitioner's defense because it caused him to "miss[] the opportunity to seek certiorari to timely submit his appeal claims to the Louisiana Supreme Court...."[37]

A review of the record, however, contradicts Petitioner's claim regarding these alleged failures and his subsequent inability to timely file with the Louisiana Supreme Court. Petitioner's letter to the Louisiana Supreme Court clarifies that—at least by April 30, 2012— Petitioner had received both notification and a copy of the Louisiana Fourth Circuit's April 25, 2012 decision.[38]

These alleged failures neither constitute a valid claim of ineffective assistance of counsel nor evidence a denial of Petitioner's right to a proper appeal. Petitioner's conclusory and unsupported assertions are insufficient to satisfy either prong of the *Strickland* test. Therefore, Petitioner is not entitled to relief for this claim.

### iii. Right to a Proper Competency Hearing (Claim 4)

In his final claim, Petitioner contends that the trial court failed to provide "a proper competency hearing and/or proper consideration...regarding his mental health condition" prior to or during trial.[39] Any competency claim requires the

---

[37] Rec. Doc. No. 1 at 34.
[38] State Rec., Vol. 4 of 4, Letter to La. S. Ct., 4/30/12 (requesting an extension of time to file his brief).
[39] Rec. Doc. No. 1 at 36.

Court to address a series of due process considerations. However, the circumstances of Petitioner's case further complicate the Court's analysis. That is, Petitioner alleges that, during the competency hearing, the state court violated his "constitutional right to confrontation."[40] Accordingly, in an attempt to clarify both Petitioner's claims and the Magistrate's Report and Recommendation the Court will analyze the issues pertaining to Petitioner's Fifth Amendment due process rights and Sixth Amendment confrontation rights separately.

<u>Due Process Analysis:</u>

A criminal defendant has distinct substantive and procedural due process rights pertaining to competency to stand trial. *See, e.g. Reese v. Wainwright*, 600 F.2d 1085 (5th Cir. 1979). Different standards govern violations of each of these rights; thus, the Court's analysis depends on the context in which Petitioner raises the competency claim. *See id.* at 1091.

First, to the extent that Petitioner alleges he was actually incompetent at the time of trial or challenges the state court's finding of competency in fact, Petitioner must seek relief under the standards for a substantive due process right violation. *See id.* at 1093-94. A defendant has a "well-established" substantive due process right "not to be tried or convicted while incompetent to stand trial." *Medina v. U.S.*, 505

---

[40] Rec. Doc. No. 1 at 37.

U.S. 437, 439 (1992) (citing *Drope v. Missouri*, 420 U.S. 162 (1971) and *Pate v. Robinson*, 383 U.S. 375 (1966)). The test for competency to stand trial is whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960). But, a federal habeas court must presume a state court's factual finding of competency to be correct. *See Deville v. Whitley*, 21 F.3d 654, 656 (5th Cir. 1994). Thus, this Court must defer to the state court's competency determination unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2)-(e)(1).

However, before the Court has a duty to investigate the substantive right violation, Petitioner bears an "extremely heavy" threshold burden to establish "sufficient facts to positively, unequivocally, and clearly generate a real, substantial, and legitimate doubt as to [his] mental capacity...to meaningfully participate and cooperate with counsel during trial." *Bruce v. Estelle*, 536 F.2d 1051, 1059 (5th Cir. 1976); *Carter v. Johnson*, 131 F.3d 452, 460-61 (5th Cir. 1997).

Petitioner has not met this threshold burden. As to the factual determination of his competency, Petitioner merely

states that the court issued a "bogus and misleading ruling," based on the findings of a "mock sanity commission empaneled to give the appearance of due process" and that such commissions are "usually always slanted in favor of the State."[41] Such allegations as well as Petitioner's statements regarding his current mental health are insufficient evidence to establish the requisite "threshold doubt about [Petitioner's] competency" at the time of his trial or conviction. *See Carter*, 131 F.3d at 460; *Bruce*, 536 F.2d at 1059. Thus, to the extent that Petitioner asserts a substantive due process right violation or challenges the state court's finding of competency, his claim fails.

Second, with respect to Petitioner's challenge as to the adequacy of the hearing or process employed by the state court to determine his competency, Petitioner must seek relief under the standards for a procedural due process right violation. *See Reese*, 600 F.2d at 1091-93.

As a corollary to the substantive right, the United States Supreme Court has clarified that a defendant also has a separate procedural right in order to "safeguard the [substantive] due process guarantee." *Id.* at 1091 (citing *Pate*, 383 U.S. at 375). That is, if "sufficient doubt of [a defendant's] competence" exists, a defendant is entitled to "further inquiry to determine

---

[41] Rec. Doc. No. 1 at 15.

his fitness to proceed." ("a *Pate* hearing"). *Drope*, 420 U.S. at 908 (citing *Pate*, 383 U.S. at 385-86). However, the Supreme Court has not enunciated a specific standard for the hearing, itself. Instead, the Supreme Court has held that the "state procedures must be *adequate*" and the state must offer a defendant "a reasonable opportunity to demonstrate that he is not competent to stand trial." *Pate*, 383 U.S. at 378 (emphasis added); *Medina v. California*, 505 U.S. 437, 451 (1992); *Drope*, 420 U.S. at 180.

Interpreting *Pate*, the United States Fifth Circuit Court of Appeals has found that a state court's competency determination "must rest on procedures and evidence 'sufficient to permit a trier of fact reasonably to assess an accused's competency against prevailing medical and legal standards.'" *Holmes v. King*, 709 F.2d 965, 967 (5th Cir. 1983) (quoting *Fulford v. Maggio*, 692 F.2d 354, 361 (5th Cir. 1982) *rev'd on other grounds*, 462 U.S. 111 (1983)). Additionally, the adequacy of the challenged procedures "varies according to the 'fact matrix.'" *See id.* (quoting *Curry v. Estelle*, 531 F.2d 766, 768 (5th Cir. 1976)).

Thus, the question for the Court is whether the state court's procedures in this case were either "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court." § 2254(d)(1);

*Pate*, 383 U.S. 375; *Medina*, 505 U.S. 437; *Drope*, 420 U.S. 162,[42]

As previously mentioned, after an initial, inconclusive competency evaluation by Dr. Deland, the state court appointed Dr. Richoux and Dr. Salcedo to join the sanity commission.[43] Doctors Richoux and Salcedo, then, jointly interviewed and evaluated Petitioner.[44] At the state competency hearing, Dr. Richoux testified and was cross-examined as to the commission's finding that Petitioner was competent to stand trial.[45] Additionally, a report and recommendation, bearing the signatures of both Dr. Richoux and Dr. Salcedo, was submitted to the court and explained the doctors' process and reasoning for finding Petitioner legally competent.[46] After Dr. Richoux's testimony, the parties agreed to a stipulation "both as to the expertise of both [Dr. Richoux and Dr. Salcedo] as well as that Dr. Salcedo's testimony would be substantially similar as Dr. Richoux's."[47] As a result, Dr. Salcedo, who was present in court, neither testified nor was subject to cross-examination. Soon thereafter, the trial court, held Petitioner competent to stand

---

[42] Generally, procedural challenges stem from a trial court's failure to do any inquiry or hold any hearing regarding a petitioner's competency. *See, e.g., United States v. Flores-Martinez*, 677 F.3d 699 (5th Cir. 2012); *Orange v. Cain*, No. 06-10761, 2009 WL 938909 (E.D. La. Apr. 6, 2009). That the trial court appointed three doctors and held a hearing distinguishes the instant case. Further, these trial court proceedings satisfy the threshold burden a petitioner bears when asserting a *Pate* violation  to "point to evidence before the trial court that raised a bona fide doubt about competency." *Holmes v. King*, 709 F.2d 965, 967 (5th Cir. 1983).

[43] State Rec., Vol. 2 of 4, Trial Transcript, 5/5/10 at 8-9; State Rec., Vol. 2 of 4, Minute Entry, 5/6/10.

[44] State Rec., Vol. 2 of 4, Trial Transcript, 5/11/10 at 5.

[45] State Rec., Vol. 2 of 4, Trial Transcript, 5/11/10 at 4-9.

[46] State Rec., Vol. 2 of 4, Commission's Report, 05/06/10; State Rec., Vol. 2 of 4, Minute Entry, 5/11/10.

[47] State Rec., Vol. 2 of 4, Trial Transcript, 5/11/10 at 10-11.

trial.[48] The judge reasoned, "[b]ased on the testimony and the stipulated testimony, I am going to find that [Petitioner] can assist his attorney in his defense, and is able to understand the nature of the proceedings."[49]

To protect a defendant's substantive right, due process may require the cross-examination of witnesses at competency hearings in some cases.[50] However, absent a specific standard set forth by the Supreme Court for competency hearings, this Court cannot conclude that the state court's procedures were either inadequate or violated Petitioner's procedural due process rights by allowing and considering Dr. Salcedo's stipulated testimony or by admitting the Commission's Report. *See, e.g., Pate*, 383 U.S. at 378.[51] Instead, the "fact matrix" regarding the state court's competency procedures (the initial examination, the subsequent appointment of a separate sanity commission to evaluate Petitioner's competency, and the hearing at which a member of the commission testified and was subject to cross-examination as to their methods, findings, and reasoning) was "sufficient to permit [the court] to reasonably assess

---

[48] State Rec., Vol. 2 of 4, Minute Entry, 5/11/10.

[49] State Rec., Vol. 2 of 4, Trial Transcript, 5/11/10 at 11.

[50] *See U.S. ex rel. McGough v. Hewitt,* 528 F.2d 339, 340 (3d Cir. 1975) (holding that the trial court erred in finding competency without holding hearing in which defendant could "present evidence and cross-examine" the psychiatrist who raised "substantial questions about [the defendant's] mental soundness); *see also Lewis v. Zon,* 573, F. Supp. 2d. 804, 815 (S.D. N.Y. 2008) (finding a due process violation where the court relied heavily upon competency reports submitted after a full hearing had been held).

[51] This conclusion is buttressed by *Ford v. Wainwright*, where the Supreme Court addressed without deciding whether defendants have a due process right to cross-examine witnesses at a competency hearing. *See* 477 U.S. 399, 426 (1986) (Powell, J., concurring) ("ordinary adversarial procedures-complete with…cross-examination…are not necessarily the best means of arriving at sound, consistent judgments as to a defendant's sanity").

[Petitioner's] competency against prevailing medical and legal standards." *See Holmes*, 709 F.2d at 967. In sum, the Court cannot conclude that the state court's procedures were contrary to or involved an unreasonable application of the adequacy standard as enunciated in *Pate*, *Medina*, and *Drope.*

<u>Confrontation Clause Right:</u>

Petitioner specifically alleges that the trial court's "improper sanity hearing" resulted in a "violation of [Petitioner's] constitutional right to confrontation."[52] To support this assertion, Petitioner claims that the stipulated testimony of Dr. Salcedo and any other submitted report were "inadmissible as hearsay" under the Supreme Court's holdings in *Crawford v. Washington*, 541 U.S. 36 (2004), *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), and *Bullcoming v. New Mexico*, 131 S.Ct. 2705 (2011).[53]

Thus, the Court must assess whether the state court procedure allowing the stipulated testimony and the sanity commission report was either contrary to or involved an unreasonable application of Confrontation Clause protections as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1); U.S. Const. amend. VI.

The Confrontation Clause of the Sixth Amendment, made applicable to the states by the Fourteenth Amendment, guarantees

---

[52] Rec. Doc. No. 1 at 37 (citing U.S. Const. amends. VI, XIV).
[53] Rec. Doc. No. 1 at 30.

that "[i]n all criminal prosecutions, the accused shall enjoy the right...to be confronted with witnesses against him." U.S. Const. amend. VI.; *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The Confrontation Clause was aimed at preventing the "use of ex-parte examinations as evidence against" a defendant "in lieu of personal examination and cross-examination of the witness." *Crawford v. Washington*, 541 U.S. 36, 50 (2004); *Barber v. Page*, 390 U.S. 719, 721 (1968).

Under the Confrontation Clause, out-of-court, "testimonial" hearsay statements are inadmissible unless the declarant is "unavailable to testify" and the defendant has "had a prior opportunity [to] cross-examin[e]" the declarant. *See Crawford*, 541 U.S. at 36; *Davis v. Washington*, 547 U.S. 813, 814-22 (2006); *see also Wharton v. Bockting*; 549 U.S. 406, 420 (2007). Although the *Crawford* and *Davis* decisions both hinged upon the distinction between "testimonial" and "nontestimonial" hearsay, the Supreme Court purposely "le[ft] for another day any effort to spell out a comprehensive definition of "testimonial." *See id.* at 68; *Davis*, 547 U.S. at 814.[54]

Consequently, two distinct questions guide this Court's review: (1) whether the stipulated testimony or sanity

---

[54] Instead, the Supreme Court acknowledged that "[v]arious formulations of [the] core class of 'testimonial' statements exist" and offered three examples: (1) "ex parte in court testimony or its functional equivalent...that declarants would reasonably expect to be used prosecutorially;" (2) "extrajudicial statements contained in formalized materials, such as affidavits, depositions, prior testimony, or confessions;" and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 51-52 (internal citations omitted).

commission report constitute "testimonial" statements; and (2) whether the scope of the Confrontation Clause extends to a defendant's competency hearing.

Assuming, arguendo, the testimonial nature of the stipulated testimony and the Commission's Report, whether or not the a violation occurred hinges upon the applicability of the Confrontation Clause guarantees to a defendant's competency hearing.

The three cases Petitioner relies upon for this claim each addressed confrontation rights during a jury trial. *See Melendez-Diaz*, 557 U.S. 305); *Bullcoming*, 131 S.Ct. 2705; *Crawford*, 541 U.S. 36. Thus, none of Petitioner's cited precedent necessarily supports an extension of Confrontation Clause protections to a defendant's competency hearing.

Additionally, a thorough review of the case law reveals that the Supreme Court has not explicitly held that the right to confrontation exists at defendant's competency hearing. Rather, the Supreme Court has extended confrontation rights only to trials. *See, e.g., Barber*, 390 U.S. at 725 (stating "[t]he right to confrontation is basically a trial right"); *California v. Green*, 399 U.S. 719, 725 (1970) (explaining that "it is the literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause"); *see also Pennsylvania v. Ritchie*, 480 U.S. 39, 54 n.10

(1987) (plurality opinion) (citations omitted) (noting that "the Court normally has refused to find a Sixth Amendment violation when the asserted interference with cross-examination did not occur at trial").

Moreover, lower courts are split on whether the scope of this right extends beyond trial. *See Lieser v. Miller*, No. 5:10-CV-2314, 2012 WL 3151172, at *2 (N.D. Ohio Aug. 2, 2012) (comparing courts that have found "that the Confrontation Clause does apply to certain pretrial hearings" to courts "that have held the Confrontation Clause is only a trial right").[55]

However, even if the Court were to conclude that the Confrontation Clause clearly applies to competency hearings and that the stipulated testimony and the Commission's Report constituted "testimonial" hearsay, Petitioner would still not be entitled to the relief he seeks. Before a federal court may grant habeas relief for the violation of a constitutional right, the court must apply harmless error analysis to "assess the prejudicial effect" of that error. *See Brecht v. Abrahamson*, 507 U.S. 619, 645 (1993) (citing *Chapman v. California*, 386 U.S. 18 (1967)); *see also Lilly v. Virginia*, 527 U.S. 116, 139-40 (1999) (finding Confrontation Clause violations are subject to harmless

---

[55] Accordingly, federal courts have denied habeas relief on the grounds that the applicability of the Confrontation Clause to a pretrial or post-conviction hearing is not "clearly established." *See Lieser*, 2012 WL 3151172 at *2-3 (citing 28 U.S.C. § 2254(d)); *Baggs v. Terrell*, No. 09-6808, 2015 WL, at *12-13 (E.D. La. Jan. 15, 2015) (finding that the "lack of Supreme Court precedent directing application or extension of the Confrontation Clause, or the holdings in *Crawford* or *Melendez-Diaz*, to post-conviction proceedings is devastating to [the petitioner's] pursuit of federal habeas relief").

error review). Under the *Brecht* standard, the Court must find the error harmless unless it "had a substantial and injurious effect or influence" on the judge's finding of competency. *See id.* at 116 (quoting *Brecht*, 507 U.S. at 631). When addressing Confrontation Clause errors, the harmless error inquiry "depends upon a host of factors," including the importance of a witness' testimony, whether the testimony was cumulative, the extent of cross-examination otherwise permitted, and the presence or absence of evidence corroborating or contradicting the testimony of that witness. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1984); *accord United States v. Contreras-Saldana*, 274 Fed. Appx. 394, 398 (5th Cir. 2008).

A review of the state trial court record shows that Dr. Salcedo's stipulated testimony was not the only evidence before the court on the issue of Petitioner's legal capacity. First, at Petitioner's initial competency hearing, Dr. Deland testified and was available for cross-examination[56] by the defense as to her findings.[57] Second, at Petitioner's subsequent competency hearing, the sanity commission submitted a joint forensic report with its findings and conclusions. Third, although Dr. Salcedo did not testify, the record shows that he was present and

---

[56] When given the opportunity to cross-examine Dr. Deland, defense counsel stated, "I have no questions, Your Honor. I am satisfied." State Rec., Vol 2 of 4, Trial Transcript, 5/5/10 at 7.

[57] State Rec., Vol. 1 of 4, Minute Entry, 5/5/10.

available to testify at Petitioner's competency hearing.[58] Additionally, the parties stipulated that Dr. Salcedo's testimony would duplicate that of Dr. Richoux, a fact supported by the content of the joint report.[59] Further, Petitioner does not assert any error of ineffective assistance of trial counsel by agreeing to such a stipulation. Thus, as to the stipulated testimony, any error in precluding cross-examination regarding Dr. Salcedo's potential testimony was harmless.

Likewise, any error in admitting the joint report without cross-examination of both doctors was harmless. Petitioner does not cite anything in the record demonstrating that the trial judge used the Commission's Report in any direct manner in determining Petitioner's legal competency. In fact, the trial judge explicitly stated that his decision was "based on the testimony and the stipulated testimony."[60] Moreover, the content of the challenged report mirrors that of Dr. Richoux's testimony at Petitioner's second competency hearing.[61] Thus, report's admission into evidence did not have a substantial or injurious effect on a finding of competency that was well supported by other evidence. Under these circumstances, its admission, if erroneous, constitutes harmless error.

In sum, the trial court's constitutional errors, if any, in

---

[58] State Rec., Vol. 1 of 4, Trial Transcript, 5/11/10 10.
[59] State Rec., Vol. 1 of 4, Trial Transcript, 5/11/10 at 10-11.
[60] State Rec., Vol. 2 of 4, Trial Transcript, 5/11/10 at 11.
[61] State Rec., Vol. 1 of 4, Commission's Report, 5/6/10; State Rec., Vol. 2 of 4, Trial Transcript, 5/11/10 at 4-10.

admitting either the stipulated testimony or the Commission's Report were, at most, harmless. Therefore, habeas relief is unavailable to Petitioner for this claim.

Conclusion:

For the reasons enumerated above, **IT IS ORDERED** that the Magistrate's Report and Recommendation is **ADOPTED** and that Troy L. Harris' petition for writ of habeas corpus is **DENIED** and **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, this 19th day of August, 2015.

_____
UNITED STATES DISTRICT JUDGE